NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

24-P-1418                                        Appeals Court

   SLV BRIDGEWATER PO, LLC  vs.  TOWN OF BRIDGEWATER & others.[1]


No. 24-P-1418.

Plymouth.     November 17, 2025. – July 22, 2026.

Present:  Hershfang, Hodgens, & Smyth, JJ.


Zoning, Comprehensive permit, Building inspector, Lodging house.
    Lodging House.  Practice, Civil, Zoning appeal, Summary
    judgment.



    Civil action commenced in the Superior Court Department on
September 10, 2021.

    The case was heard by William M. White, Jr., J., on a
motion for summary judgment.


    Jason A. Pithie (Howard N. Gorney also present) for the
plaintiff.
    Jason M. Rawlins for the defendants.


    HODGENS, J.  After the plaintiff, SLV Bridgewater PO, LLC

(SLV), constructed an apartment building pursuant to a

─────────────

    [1] The zoning board of appeals of Bridgewater and Stephan
Solari, as building inspector and zoning enforcement officer of
Bridgewater.

comprehensive permit approved under G. L. c. 40B, the defendant building inspector for the town of Bridgewater issued a cease and desist order. Citing a provision of the town's zoning bylaws prohibiting lodging houses, the order asserted that SLV had violated the bylaw by leasing, or intending to lease, apartment units to four or more tenants unrelated to the owner of the property. SLV unsuccessfully appealed from that order to the town's zoning board of appeals (board) and thereafter challenged the board's decision and sought damages by filing a complaint in the Superior Court. A judge allowed the defendants' motion for summary judgment. We reverse in part and affirm in part.

Background. On October 10, 2018, the board unanimously approved a comprehensive permit pursuant to G. L. c. 40B, §§ 20-23, allowing Scollay Development, LLC, to construct a four-story apartment building containing "one, two and three-bedroom units," and reserving just over twenty-five percent of units for below-market rent. The comprehensive permit included more than one hundred conditions, separated into nine categories including regulatory, general, activity and use limitation, waivers, and validity of permit, among others. Regulatory conditions limited the total number of "dwelling units" to fifty-eight "as shown on the Plans of Record," and a maximum of one hundred and twelve bedrooms. General conditions required construction "in

accordance with the Plans of Record" and compliance with all town bylaws "unless expressly waived" or "as provided on the approved Plans." The board expressly waived a zoning bylaw prohibiting multi-family dwellings in the district.

On May 31, 2019, Scollay Development, LLC, assigned its rights in the comprehensive permit to SLV. On July 15, 2019, SLV submitted a "Notice of Project Change" to the board, indicated that the comprehensive permit had been transferred, and sought approval for a new set of architectural plans. The new plans made "insubstantial change[s]," maintained the fifty-eight apartments, and referenced three available configurations: one bedroom; two bedrooms; and three bedrooms. The plans clearly indicate that each bedroom would have two beds such that one-bedroom units would have two beds; two-bedroom units would have four beds; and three-bedroom units would have six beds for a total of 222 beds. On August 20, 2019, the board unanimously approved the new plans, showing bedroom occupancy, without any additional conditions.

Nearly two years later, on June 16, 2021, the building inspector sent SLV the cease and desist order. He noted that the zoning bylaws prohibited "the addition of lodging houses within any zoning district" and further noted that a lodging house is defined as a "house/dwelling unit where lodgings are let to four or more persons not within the second degree of

kindred to the legal owner of the premises." The building inspector reasoned that because each apartment constituted a "dwelling unit" under the bylaw, SLV could not lease any unit to four or more people outside the second degree of kindred to SLV. He ordered SLV to "cease and desist from letting dwelling units to four or more persons not within the second degree of kindred" and ordered SLV to immediately notify tenants that it would be unable "to accommodate or honor lodging where four or more persons not within the second degree of kindred will be staying."

SLV appealed from the building inspector's order to the board pursuant to G. L. c. 40A, §§ 8, 14-15. Following a public hearing, the board unanimously voted to uphold the building inspector's order. Pursuant to G. L. c. 40A, § 17, SLV appealed from the board's decision by filing a multi-count complaint in the Superior Court. As to all counts, SLV claimed, among other reasons, that there was no lawful basis for the cease and desist order because it had obtained a comprehensive permit that allowed a maximum of six tenants per unit as set forth in the newly approved plans. SLV also sought damages. The defendants filed counterclaims seeking a declaration that SLV was operating an illegal lodging house.

The judge allowed the defendants' motion for summary judgment on the complaint and counterclaims. In so doing, the

judge rejected the claims seeking damages, concluded that SLV did not obtain a waiver from the occupancy limit set forth in the lodging-house bylaw, declared that "SLV is in violation of the lodging-house bylaw," and enjoined SLV from letting units to four or more persons who are not related to each other by blood or marriage."

On appeal, SLV only challenges the judgment as it pertains to the occupancy limit and does not press its claims for damages.  For the reasons that follow, we reverse that portion of the judgment pertaining to the occupancy limit.  Where SLV has not advanced any argument on its claims for damages, we affirm that portion of the judgment that rejects those claims.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

Discussion.  Our obligation on appeal is to examine the "zoning board's decision and that of the reviewing Superior Court."  Eastern Point, LLC v. Zoning Bd. of Appeals of Gloucester, 74 Mass. App. Ct. 481, 486 (2009).  The board's decision "cannot be disturbed unless it is based on a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary."  MacGibbon v. Board of Appeals of Duxbury, 356 Mass. 635, 639 (1970).  "[S]ummary judgment is appropriate where there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law" (citation

omitted).  Williams v. Board of Appeals of Norwell, 490 Mass. 684, 689 (2022).  Applying de novo review to the summary judgment record, Tracer Lane II Realty, LLC v. Waltham, 489 Mass. 775, 778 (2022), we conclude that the decisions of the board and the reviewing judge upholding the cease and desist order conflict with the requirements of G. L. c. 40B.

We need not address the defendants' interpretation of the lodging house bylaw because the board established the occupancy limits through the operation of G. L. c. 40B, § 21.  By approving the comprehensive permit applications under G. L. c. 40B, § 21, which authorizes the board to override certain local requirements, the board established the occupancy limits long before the cease and desist order attempted to enforce the lodging-house bylaw.  See Dennis Hous. Corp. v. Zoning Bd. of Appeals of Dennis, 439 Mass. 71, 77 (2003) (board "has the power to override requirements or restrictions that would normally be imposed by" local boards).  Through the comprehensive permit dated October 10, 2018, the board initially approved a "mix of one, two and three-bedroom units."  On August 20, 2019, the board unanimously approved SLV's new plans that included apartment configurations of one bedroom (two beds), two bedroom (four beds), and three bedroom (six beds) without any limitation on the basis of the familial relationship of the occupants to one another or to the owner of an apartment.  The board did not

impose any conditions limiting occupancy to less than the number of beds identified in the newly approved plans or to persons within the second degree of kindred.  After obtaining the board's approval of the new plans, SLV constructed the apartment building "in accordance with the Plans of Record" as required by the conditions of the comprehensive permit.  By incorporating the plans of record, the comprehensive permit, as amended by the board's approval of the new plans, fixed the occupancy limit, superseded the occupancy limit contained in the lodging-house section of the bylaws, and foreclosed the building inspector's attempt in the 2021 cease and desist order to impose different occupancy limitations.  See G. L. c. 40B, § 21 (decision of board granting comprehensive permit subsumes approvals by "any local board or official who would otherwise act"); Zoning Bd. of Appeals of Amesbury v. Housing Appeals Comm., 457 Mass. 748, 759 (2010) (core purpose of chapter 40B is "to streamline the process for obtaining the necessary authorization to build much needed low and moderate income housing"); Dennis Hous. Corp., 439 Mass. at 77 (board may "override" bylaw).

Approval of a comprehensive permit does not, by itself, deprive municipal officials from exercising all legitimate police powers under the zoning bylaws.  See Board of Appeals of Hanover v. Housing Appeals Comm. in Dep't of Community Affairs, 363 Mass. 339, 360 (1973) ("municipalities can pass zoning

ordinances or by-laws as an exercise of their independent police powers but these powers cannot be exercised in a manner which frustrates the purpose or implementation of a general or special law").  See also Board of Appeals of N. Andover v. Housing Appeals Committee, 4 Mass. App. Ct. 676, 683 (1976) (G. L. c. 40B, §§ 20-23 does not prevent enforcement of building requirements under State building code).  Municipal officials cannot, however, approve an occupancy limit under a comprehensive permit only to later unilaterally change their minds about the very same occupancy limit under the guise of that power.  Here, the board's approval of the comprehensive permit allowing up to six occupants in designated apartments without any limitation as to their familial relationships necessarily deprived the building inspector of any lawful basis to issue a subsequent cease and desist order that attempted to restrict unit occupancy to fewer than four people.  See Taylor v. Board of Appeals of Lexington, 451 Mass. 270, 277-278 (2008) (chapter 40B furthers Legislature's goal of increasing low or moderate income housing "primarily by overriding local zoning restrictions"); Board of Appeals of Hanover, 363 Mass. at 385 (comprehensive permit is "mechanism designed to supersede, when necessary, local restrictive requirements and regulations, including zoning by-laws and ordinances").  By upholding the building inspector's cease and desist order that had no lawful

basis, the board decided SLV's appeal on "a legally untenable ground." MacGibbon, 356 Mass. at 639. The defendants' motion for summary judgment should have been denied on this basis.

We disagree with the defendants' contention that a condition embedded within the comprehensive permit reserved the building inspector's authority to enforce the lodging-house bylaw's occupancy limit at some future time. They point to the board's comprehensive permit condition that generally required SLV to "comply with the Town of Bridgewater Zoning Bylaw." Given the board's ability to override local regulations, the power of a zoning board to subsequently enforce its zoning regulations does not extend to changing occupancy limits that had previously been fixed by a comprehensive permit. Neither chapter 40A nor 40B countenances such caprice by a municipal board -- approving occupancy limits under a comprehensive permit followed by an astonishing about-face years later by issuing a cease and desist order imposing new occupancy limits. Government power exercised thusly slips into the prohibited category of "unreasonable, whimsical, capricious or arbitrary" conduct. MacGibbon, 356 Mass. at 639. We also note that the board was aware that SLV is a business entity and logically cannot be kindred to the tenants. With that understanding, as well as the plans showing up to six tenants per unit without restriction, it would be unreasonable for the board to approve

the comprehensive permit only to later agree with the building inspector that tenants in units with four or more occupants also required kinship with SLV.

Moreover, the defendants' position would thwart the appellate process under chapter 40B and would reduce the comprehensive permit to a hollow parchment promise. When a municipality approves a comprehensive permit, the board is authorized to impose conditions. See G. L. c. 40B, § 21. If the conditions and requirements render the "housing uneconomic," within twenty days of the board decision "the applicant shall have the right to appeal to the housing appeals committee in the executive office of housing and livable communities for a review of the same." G. L. c. 40B, § 22. As illustrated by the present case, an applicant is deprived of these appellate rights if the conditions and requirements lack specificity.

The comprehensive permit's condition that SLV comply with all zoning bylaws gave no hint that the lodging-house bylaw might someday strike like a bolt out of the blue to render the "housing uneconomic" -- such a potential problem did not emerge here until years after project approval when the building inspector invoked the specific occupancy limits in the lodging-house bylaw. By then, the twenty-day appeal period had lapsed, and SLV did not have an opportunity to appeal to the housing appeals committee. If the board wanted to limit occupancy based

on familial relationships, rather than approving the unrestricted bedroom configurations in the new architectural plans, the board should have added conditions specifying such occupancy limits.  G. L. c. 40B, § 21.  That was not done here.  The board's general reservation of rights under the zoning bylaws fell far short of providing the rudimentary "full notice as shall enable all those interested to know what is projected and to have opportunity to protest," Kane v. Board of Appeals of Medford, 273 Mass. 97, 104 (1930), the specific occupancy limits later invoked under the cease and desist order.

Finally, we reject the defendants' contention that the defendants are entitled to summary judgment because SLV failed to request a specific waiver of the lodging-house bylaw prohibiting occupancy by four or more unrelated tenants.  While regulations provide that "a list of requested Waivers," 760 Code Mass. Regs. § 56.05(2)(h) (2020), shall be submitted in an application to the board, the absence of "a particular item shall not necessarily invalidate an application."  760 Code Mass. Regs. § 56.05(2) (2020).  Here, although the list of waivers did not include the lodging house section of the bylaws, the intended occupancy was not a secret where nothing in the application suggested that occupancy would be limited based on familial relationships.  According to the procedural summary in the comprehensive permit and the exhibits in support of the

application, Scollay Development, SLV's predecessor, disclosed from the outset that it intended to lease a "mix of one, two and three-bedroom units." A sample lease clause on subletting, submitted to the board, stated that the units were "intended only for residential purposes by not more than one family unit nor more than two (2) unrelated persons per bedroom," which would have allowed at least six unrelated persons in a three-bedroom unit. Aided by a consultant on chapter 40B projects, the board approved the application and expressly waived the zoning bylaw prohibiting multi-family dwellings in the district. The new plans submitted by SLV, and approved by the board, made "insubstantial change[s]" and simply delineated the occupancy limits of the apartments as one bedroom (two beds), two bedrooms (four beds), and three bedrooms (six beds). Because Scollay Development sought occupancy limits that allowed for units with more than four tenants unrelated to the owner, the absence of an additional, express request by SLV for a waiver of the lodging-house bylaw's prohibition regarding tenants unrelated to the owner did not invalidate the application or the subsequent comprehensive permit. See 760 Code Mass. Regs. § 56.05(7) ("Applicant may request Waivers as listed in its application or as may subsequently arise during the hearing . . . " [emphasis added]). See also 760 Code Mass. Regs. § 56.05(2).

Conclusion.  We reverse so much of the judgment that declares that SLV is in violation of the lodging house bylaw and enforces the cease and desist order.  The matter shall be remanded for a new judgment instructing the board to vacate the cease and desist order.  The remainder of the judgment on the claims for damages is affirmed.

So ordered.